IN THE MATTER OF JOHN T. DUNN, WHO APPLIES TO BE ADMITTED TO EXAMINATION FOR ATTORNEY'S LICENSE.

The rule which directs that every applicant for examination for an attorney's license, must first have served a regular clerkship with some practicing attorney for four years, requires that the applicant should, during that period, have been actually engaged in assisting the attorney whom he serves, in his business and under his control. The rule is not complied with by the mere study of law for four years, coupled with the registering of the student's name in an attorney's docket and occasional visits to his office. Full, fair and *bona fide* service as a regular assistant is enjoined.

On motion to admit Mr. John T. Dunn to examination for license as an attorney.

Argued at June Term, 1881, before Justices DIXON and PARKER.

For the motion, *W. C. Spencer.*

*Contra, J. R. English* and *R. E. Chetwood,* (under appointment by the court.)

The opinion of the court was delivered by

DIXON, J.   The question raised upon this application is whether the petitioner has complied with the third rule of this court, which provides that no person shall be admitted to examination for attorney's license unless he shall have served a regular clerkship with some practising attorney of the court for the term of four years at least, and shall not, at any time during such clerkship, have been engaged in or pursued any business, occupation or employment incompatible with the full, fair and *bona fide* service of his clerkship.

What the applicant has done toward compliance with this rule is best shown by the following extracts from the evidence adduced in support of the application.

The attorney to whom the service is said to have been rendered testified: "At the time Mr. Dunn entered his name, he informed me that he did not have sufficient means to support his family during the period of time that would be required to be devoted to his studies, but that he was gradually giving up the painting business, and had in fact at that time relinquished his shop, and would be, as he thought, able to support his family and devote considerable time to reading and without manual labor, but that he could not spend much of his time in the office; I told him I would require of him what had been required of me under the same circumstances; that for the first three years of his clerkship he should report to me at frequent intervals, to give me an opportunity to inquire as to what he was doing, and for the last year I would expect him to devote the most of his time to the office, and in the meantime to give as many days as he could."

The applicant himself, in answer to interrogatories, testified:

" *Q.* When did you enter your name as a student at law with Mr. G.?   *A.* October, 1876.   *Q.* During the term of your study, how much of it did you spend as an actual occupant of his office?   *A.* Whenever I could spend the time; I usually was there two or three times in the week, and very frequently evenings; I considered the evenings the best time to be there, and he was usually alone; I did a good deal of

In re John T. Dunn.

my studying at home; there was no day that I did not spend four or five hours either at his office or at home; I have frequently studied as many as ten hours at my house when I felt like study; I usually do my study day and evening, too, whenever I had opportunity; I did some clerical work in Mr. G.'s office for him; not a great deal—some pleadings, I think—I don't recollect how much; I could not tell whether I did a week's work; I should judge I had. *Q.* How many days will you undertake to say that you spent in his office? *A.* That would be a hard thing for me to say, unless I could average them by the years since I have registered. *Q.* Average, then? *A.* Well, I usually called there a couple of days in the week, and usually evenings; how to get at the average is something I cannot exactly tell, to swear to; I would rather leave it at the present statement than to undertake it. *Q.* How many consecutive days have you ever so spent? *A.* Well, not a great many—I was too busy."

We have no hesitation in concluding that this evidence does not show a compliance with the rule. It indicates that Mr. Dunn has, during the last four years, given considerable time to the study of law, but that is not what the express provisions of the rule demand. Whether an applicant has studied sufficiently is left, by our rules, to be determined upon the examination which he must undergo; and altogether aside from that question is the inquiry whether he has served the necessary clerkship.

The substance of this prerequisite it is not difficult to perceive. A clerkship to an attorney imports the office of assistant to an attorney, an actual occupation in and about the attorney's business and under his control. The service is to be rendered, not solely or mainly by the study of law-books, but chiefly by attending to the work of the attorney under his direction. The purpose of the rule is that the clerk shall be actually engaged in the practice of law under the guidance of his master for the stated period, so that by direct contact with an attorney's duties he may acquire the skill and facility in the profession which are necessary for enabling him to pro-

tect and promote independently the interests that clients may afterwards commit to him. This is the sole object of requiring the clerkship to be served with a practicing attorney. For the mere study of legal principles, a retired counselor or a professor would be an apter guide.

The rule is a very old one in this state. It is found among the rules as revised at February Term, 1805, and printed in *Coxe, p. VI.* No doubt it was derived from the English statutes of 2 Geo. II., chaps. 23, 46, which required similar service.

Under these acts, the King's Bench struck an attorney's name from the roll, because it appeared that he had not, during the whole time of his preliminary clerkship, been actually employed by the attorney to whom he was articled in the proper business, practice or employment of an attorney. *In re Taylor,* 6 *D. & R.* 428. And in *Ex parte Hill,* 7 *T. R.* 452, and *In re Smith,* 10 *Jur.* (*N. S.*) 939, the alleged service was deemed insufficient, because not rendered at the place of business of the master, or one presided over by him or some partner or managing clerk representing him, and competent to instruct the applicant.

But we need not cite other cases for the interpretation of the rule. Its language is clear, and, in our judgment, expresses what we have above stated to be its meaning. In the present case, the applicant and the attorney seem both to have misconceived its purport. They have regarded study as equivalent to clerkship. We do not. We are not called upon to determine whether the pursuits of the applicant outside of his legal studies were incompatible with the full, fair and *bona fide* service of a clerkship, (in which event alone are they forbidden by the rule,) because, we think, there has been no attempt, either by the applicant to render or by the attorney to exact, at least during three years of the designated term, such a regular clerkship as the rule enjoins.

The motion to admit Mr. Dunn to examination must be refused.